## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-_____-___-___

**NHC LLC, a Florida limited liability company,**

        Plaintiff,

v.

**CENTAUR CONSTRUCTION COMPANY INC.**, an Illinois corporation, **SPIRO TSAPARAS**, and **PETER ALEXOPOULOS,**

        Defendants.

Underlying Case:

U.S.D.C. for the
Northern District of Illinois,
Eastern Division

Case No. 1:19-cv-06332

## NON-PARTIES M SOURCING, LLC AND M DEVELOPMENT, LLC'S MOTION (1) TO QUASH THIRD PARTY CITATIONS TO DISCOVER ASSETS AND (2) FOR A PROTECTIVE ORDER

Non-parties M Sourcing, LLC and M Development, LLC (collectively, the "M Entities") by and through counsel, and pursuant to Rules 45 and 69 of the Federal Rules of Civil Procedure, hereby move for an order (1) quashing the Third Party Citations to Discover Assets (the "Citations") issued by NHC LLC ("NHC") in Case No. 19-cv-06332 in the Northern District of Illinois and (2) for entry of a protective order. As grounds therefor, the M Entities state as follows:

### INTRODUCTION AND FACTUAL BACKGROUND

This Motion stems from a proceeding in the Northern District of Illinois – *NHC LLC v. Centaur Construction Company Inc., Spiro Tsaparas, and Peter Alexopoulos* (the "Underlying Lawsuit").[1] The M Entities are non-parties in the Underlying Dispute. To the best of the M Entities' knowledge, NHC is the plaintiff in that case and has received a judgment against the

_____

[1] True and correct copies of the Citations are attached hereto as Exhibit "2."

Defendants, Centaur Construction Company, Inc., Spiro Tsaparas, and Peter Alexopoulos (the "Defendants" or "Judgment Debtors").

The M Entities are real estate investment and development companies located in Aspen, Colorado. *See* Hunt Declaration, attached as Exhibit 1, ¶ 4. The M Entities are each headquartered in Colorado. *See id.* The M Entities do not have offices in Illinois, do not conduct business in Illinois, and do not own properties in Illinois. *See id.* None of the Judgment Debtors have a direct or indirect ownership interest in the M Entities, which are owned 100% by Mark Hunt or entities that are entirely owned by Mark Hunt. *See* Hunt Decl. ¶ 5. In fact, the only connection that the M Entities have to the case is that the M Entities had certain business dealings with some of the Defendants, including employing Mr. Tsaparas. Specifically, Defendant Centaur Construction Company, Inc. ("Centaur") acted as a general contractor for some of the M Entities' real estate projects, and Mr. Tsaparas, when acting as a contractor and later as an employee, oversaw the construction of many additional projects for the M Entities. *See* Hunt Dec. ¶¶ 7-8. As a result of these relationships, the M Entities have made certain payments to and on behalf of the Judgment Debtors and have entered into certain contracts with the Judgment Debtors. To the best of the M Entities' knowledge, all documents related to these payments and contracts have been produced to Plaintiff. *See* Hunt Dec. ¶ 11.

The Citations are the latest in a long line of requests from NHC for documents and information from the M Entities related to the Defendants. In August 2023, NHC served its first third-party citation on the M Entities (the "First Citation"), seeking documents related to any assets, income, or accounts that the M Entities may have been holding for Defendants. *See* Exhibit 3. In response, the M Entities produced 296 pages of responsive documents. Following the citations, in September 2023, NHC took the deposition of Mr. Hunt. *See* Exhibit 4. Then, more

than a year later, in December 2024, NHC served a subpoena on the M Entities asking for additional information about certain payments that were identified from the prior citations (the "Subpoena," and with the First Citation and Deposition, the "Prior Requests"). *See* Exhibit 5. Indeed, the M Entities cooperated with NHC in responding to each of the Prior Requests in a timely and fulsome manner, based on the agreements of the parties.

On January 14, 2025, NHC served the Citations. Unlike the Prior Requests, which were limited to documents pertaining to the assets of the Defendants to assist in collection efforts, the Citations each contain nearly 50 document requests, many of which are irrationally broad. The Citations, if responded to fully, would encompass a vast number of documents that have no relation whatsoever to the Debtors' assets and, in some instances, no relation to the Judgment Debtors at all. For example, the requests seek *all* documents and communications relating to *any* of the Judgment Debtors or *any* work performed by the Debtors, as well as *anyone* affiliated with them. Mr. Tsaparas is an employee of the M Entities, and several other of the M Entities' employees have worked closely with him and Centaur. Producing all documents responsive to these requests would require producing every document for all real estate projects Mr. Tsaparas or his affiliates participated in. This would encompass approximately 20-30 projects and would likely require the production of many thousands of documents, most of which have *nothing* to do with the Underlying Lawsuit, or information pertaining to the assets of the Judgment Debtors. Specifically, requests 7-9, 20-23, 28-30, 36, 38-40, 43, and 45[2] seek documents which, if fully responded to, would impose an immense and disproportionate burden on the M Entities (non-parties to the

---

[2] Plaintiff served citations on both M Development and M Sourcing and the requests within the documents are nearly identical, but some of the requests do not have the same numbering. For simplicity, all references to the requests will use the numbering from the citation to M Sourcing, which has been the practice of the parties during this process.

Underlying Lawsuit or any litigation related to Plaintiff or Defendants), and would also require them to produce confidential business records that are well outside the bounds of what is permitted by the Federal Rules of Civil Procedure and Illinois Law. No law (Federal, Colorado, Illinois) imposes such rigid and burdensome requirements on a non-party discovery recipient.

The M Entities' actions to date demonstrate that they are willing to cooperate and produce documents that are actually related to assets/property of the Judgment Debtors and contracts/agreements with the Judgment Debtors, as provided under Illinois law. The M Entities cooperated and responded to all of the Prior Requests, including sitting for a deposition. Counsel for the M Entities conferred extensively with counsel for Plaintiff to narrow the scope of the requests to items that are actually relevant to Plaintiff's collection efforts, and the parties ***agreed*** to narrow the scope of the requests. Pursuant to this agreement, which was memorialized in a letter from the M Entities' counsel on April 8, 2025 (attached as Exhibit 6), the M Entities identified and preserved their objections to the requests and produced 319 pages of documents in response to the Citations (in addition to the 306 pages of documents previously produced). In total, throughout this process, the M Entities have produced, to the best of their knowledge and after a diligence search, all documents relevant to the assets, property, and income of the Judgment Debtors, as well as all documents related to payments to and agreements with the Judgment Debtors, including (but not limited to) (1) spreadsheets detailing all payments from the M Entities to or on behalf of the Judgment Debtors; (2) wire receipts for payments to or for the benefit of the Judgment Debtors; (3) communications related to payments to the Judgment Debtors; (4) tax records related to the Judgment Debtors; (5) copies of agreements between the M Entities and the Judgment Debtors; (6) communications related to those agreements; (7) the LLC agreement and articles of organization for M Sourcing; (8) a chart identifying the projects that Mr. Tsaparas and any other

employee of the M Entities associated with the Judgment Debtors has worked on; (9) invoices from Triton Marine, LLC (another entity associated with Mr. Tsaparas) to the M Entities for services provided; and (10) applications and certificates for payment related to the construction services provided by Centaur Construction Company, Inc. Thus, the documents produced by the M Entities are, to the best of the M Entities' knowledge and based on a diligent and reasonable search, all of the documents responsive to requests 1-2, 4-6, 10, 12, 13, 15-16, 18-19, 26, 31, 33-35, and 47. Moreover, the M Entities confirmed that they have no documents responsive to requests 3, 11, 14, 17, 24-25, 27, 32, 37, 41-42, 44, 46, and 48. Plaintiff has not explained why these prior productions were not sufficient.

After they produced the documents on April 8, 2025, the M Entities did not hear from Plaintiff for more than three months and, therefore, logically assumed that the matter had concluded. Then, on July 16, 2025, the M Entities received an email from Plaintiff "out of the blue" asking the M Entities to confirm that they did not intend to produce additional documents in response to the Citations. *See* Exhibit 7. The M Entities responded to this email on July 30, 2025, confirming that, to the best of their knowledge, they had produced all documents responsive to the modified requests and suggesting that if Plaintiff believed there were any additional documents that should be produced, despite the parties' prior agreements to narrow the scope of the Citation, Plaintiff should further confer with the M Entities on those particular issues, as the parties had previously and successfully done. *See* Exhibit 8. Rather than respond and provide additional categories of documents that Plaintiff believed to be missing, or otherwise participate in the meet

and confer process in good faith, Plaintiff filed a motion to compel (the "Motion to Compel") in the Underlying Lawsuit in Illinois. *See* Exhibit 9.[3]

Given the Motion to Compel, for which Plaintiff did not properly confer with the M Entities, the M Entities now understand that Plaintiff intends to re-tread past grounds and seek the production of all documents responsive to the grossly overbroad requests included in the Citations. Given that such a production would be overly burdensome to the M Entities, would require the M Entities to produce irrelevant and confidential business information, and would go well beyond the documents Plaintiff is entitled to under the Federal Rules of Civil Procedure and Illinois law, the M Entities now seek to quash the portions of the Citations that seek such documents or, in the alternative, ask that the Court issue a protective order preventing further production.

## **MEMORANDUM OF LAW**

### I.   **Legal Standard**

The citations were issued under Federal Rule of Civil Procedure 69. Rule 69 provides that proceedings supplementary to and in aid of judgment "must accord with the procedure of the state where the court is located, ***but a federal statute governs to the extent it applies***." (Emphasis

---

[3] In the Motion to Compel, Plaintiff identified two specific documents which it believed had not been produced, including documents related to one of the payments from the M Entities to Mr. Tsaparas' attorneys (from September 2024) and a draft of a promissory note for amounts owed by Mr. Tsaparas to the M Entities. Plaintiff had never identified these documents prior to the Motion to Compel and the M Entities were unaware of the concerns related to these specific documents prior to that time. Upon reviewing the Motion to Compel, the M Entities reviewed their records and realized that (1) they had inadvertently failed to produce documents related to the September 2024 payment (they had produced documents related to all of the other payments to Mr. Tsaparas' attorneys) and (2) because the draft promissory note did not materialize until after the production in April, the M Entities had inadvertently failed to supplement the prior production and produce the draft note. The M Entities have since produced the identified documents, and would have done so without the Motion to Compel if Plaintiff had raised the issue during a conferral. It appears that Plaintiff's decision not to confer was likely strategic, as it allowed Plaintiff to play "gotcha" with the Motion to Compel.

added.) Courts are clear that the Federal Rules of Civil Procedure are a "federal statute" and therefore, govern supplementary proceedings to the extent there is a conflict with state rules. *See, e.g., Sabol v. Brooks*, 469 F. Supp. 2d 324, 327 (D. MD. 2006) (federal rules take precedence over conflicting state law in a Rule 69 procedure); *Alejandre v. Republic of Cuba*, 42 F. Supp. 2d 1317, 1341 (S.D. Fla. 1999) (the federal rules of civil procedure are a federal statute and therefore govern who may serve a writ of execution). Thus, the Federal Rules of Civil Procedure, including Rule 45, governs the Citations, and Illinois law provides a supplement, to the extent Illinois has requirements above and beyond what is required under the federal rules. *See Folex Golf Indus., Inc. v. China Shipbuilding Indus. Corp.*, No. 09-2248 PSG, 2018 WL 11374964, *2 (C.D. Cal. July 27, 2018) (state law supplements the federal rules in actions under Rule 69).

A.    **Federal Rule of Civil Procedure 45**

The Citations are seeking the production of documents from a non-party and, therefore, must comply with Fed. R. Civ. P. 45. *See Sabol*, 469 F. Supp. 2d at 327 (D. Md. 2006).[4] Rule 45 provides that motions to quash are to be heard by the Court where compliance is required, which in this case is Colorado. *See* Fed. R. Civ. P. 45(c)(2)(A) (mandating that the place of compliance is within 100 miles of where the person resides, is employed, or regularly transacts business in person). Rule 45 also mandates that courts quash or modify subpoenas as follows when the subpoena:

(i)    fails to allow a reasonable time to comply;
(ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii)  requires disclosure of privilege or other protected matters, if no exception or waiver applies; or

---

[4] In *Sabol*, the court confirmed that the geographical limitations in Rule 45 apply to proceedings under Rule 69, including the requirement that the court enforcing the subpoena must be the court where the non-party is located.

       (iv)     subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). Additionally, Rule 45 further empowers the court to quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

Additionally, "[i]t is well-settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Gerk v. Carroll*, No. 22-mc-00072-RM, 2022 WL 1642401, at *1 (D. Colo. May 24, 2022).[5] Thereunder, "if the relevancy of the discovery sought is not apparent, the party seeking the discovery bears the burden of establishing relevancy of the request." *Id*. "Factors considered in determining whether a subpoena is unduly burdensome include non-party status, relevance, the issuing party's need for the discovery, and the breadth of the request." *Jones v. Woodrow*, No. 22-cv-00545-CMA-SBP, 2024 WL 3568678, *2 (D. Colo. April 8, 2024) (quashing overbroad and unduly burdensome subpoena). Further, "When seeking discovery from a nonparty, the requesting party 'must meet a burden of proof heavier than the ordinary burden imposed under Rule 26.'" *Vyanet Operating Group, Inc. v. Maurice*, No. 21-cv-02085-CMA-SKC, 2023 WL 3791458, *3 (D. Colo. June 2, 2023) (quoting *Echostar Commc'ns Corp. v. News Corp. LTd,* 180 F.R.D. 391, 394 (D. Colo. 1998). "Courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and the status of a person or entity as a nonparty is a factor which weighs against disclosure." *Id*.

---

[5] As stated above, the Court applies the Federal Rules of Civil Procedure, supplemented by the state law where the Underlying Lawsuit is located. *Sabo*, 469 F. Supp. 2d at 327. Because Rule 45 mandates that disputes regarding subpoenas must be addressed by the court where production occurs, the law in this jurisdiction apply when determining whether the Citations are proper under the Federal Rules.

Further, as a matter of law, "blanket requests seeking 'all documents' relating to various issues are 'overbroad' and impermissible." *GSL Group, Inc. v. Travelers Indemnity Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 12813087, *3 (D. Colo. May 27, 2020) (holding a subpoena was over broad where the subpoena requested "all documents" and "all communications" related to certain topics, noting that "[g]iven this extraordinarily broad language, it is hard to imagine what documents, information, or individuals would not be swept up in these expansive definitions, including privileged and irrelevant materials."); *In re Urethane Antitrust* Litigation, No. 04-MD-1616-JWL-DJW, 2008 WL 110896, *1 (D. Kan. Jan. 8, 2008) ("a discovery request is overly broad and unduly burdensome on its face if it uses an 'omnibus term' such as "relating to," because "such broad language 'makes arduous the task of deciding which of numerous documents may conceivably fall within its scope.'").

As an alternative, a court may issue a protective order under Fed. R. Civ. P. 26(c), upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." The "good cause" calculation requires that the Court balance "the moving party's need for information against the injury which might result from unrestricted disclosure." *Exum v. U.S. Olympic Committee*, 209 F.R.D. 201, 206 (D. Colo. 2002). In addition, the Court should consider any privacy interests that may be implicated. *Id.*

## B.    Illinois State Law

Illinois Supreme Court Rule 277 provides the procedure for the issuance of citations under Illinois state law. Illinois Rule 277(c)(4) limits the scope of a Citation to "upon reasonable specification thereof, the production at the examination of any books, documents, or records in his or its possession or control which have or may contain information concerning the property or income of the debtor."

II.    **The Citations Seek Production of Documents and Disclosure of Confidential Information Protected by Rule 45.**

As stated above, Rule 45 prohibits a subpoena from requiring disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. Fed. R. Civ. P. 45(d)(3)(B)(i). Indeed, "a district court *must* quash or modify" such a subpoena unless the requesting party "shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship." *Nutritional Biomimetics, LLC v. Empirical Labs Inc.*, Case No. 16-cv-01162-RMT, 2017 WL 6945030, *2 (D. Colo. Aug. 4, 2017) (quashing a subpoena where the requesting party could not demonstrate the relevance of requested confidential business records). And, importantly, "disclosure of material involving the commercial relationship and activities between []a non-party []and []another non-party" is further protected under the provisions of Rule 45(d)(3)(B)(i). *Anderson, Greenwood & Co. v. Nibsco Supply, Inc.*, No. 96-MC-15-E, 1996 WL 377205, at *2 (W.D.N.Y. June 27, 1996) (denying production of "proprietary or commercially sensitive information" requested in subpoena to non-party).

Notwithstanding this clear legal requirement, the Citation seeks, without limitation, confidential commercial information from the M Entities that have no relevance to the question of the Judgment Debtors' assets—the only matter at issue. Specifically, the Document Requests seek production of items such as the M Entities' bank statements, tax returns, corporate ledgers, employee information, and emails related to the vast majority of its real estate deals, going back five years. (Requests # 28-30, 36, 38, and 43). The documents responsive to these requests would include nearly ***all*** of the M Entities' financial dealings, as well as its confidential dealings with other non-party commercial entities and sensitive employment information. *See* Hunt Dec. ¶ 15. Production of such materials is especially problematic because NHC is also a real estate developer

and competitor of the M Entities and providing such sensitive material would place the M Entities at a competitive disadvantage. *See id.*

The M Entities have produced all the documents which are responsive to the request as they relate to its financial payments to the Judgment Debtors and the M Entities' contractual and other arrangements with the Judgment Debtors, including (1) bank and financial records related to payments from the M Entities to the Judgment Debtors; (2) tax records related to the Judgment Debtors; (3) contracts or agreements between the M Entities and the Judgment Debtors; and (4) communications relating to those topics. NHC has suggested the Judgment Debtors may have an ownership interest in the M Entities and that this justifies the requests. This suggestion is false, and the parties initially agreed to resolve the issue by having the M Entities provide an affidavit, adopting language propounded and approved ***by Plaintiff***, to confirm that the Judgment Debtors do not own, either directly or indirectly, any interest in the M Entities. Now, Plaintiff seeks to do a complete about-face and disregard its own agreement and language related to the proposed affidavit in lieu of seeking further invasive and confidential documents that delve into the inner-workings of the M Entities. Any additional documents that Plaintiff continues to seek has no relevance to Plaintiff's collection efforts and, therefore, unreasonably and unnecessarily invades the M Entities' confidential business information. *See, e.g., Nutritional Biomimetics, LLC*, 2017 WL 6945030, *2 (quashing a subpoena for confidential financial information); *Palm Ave. Hialeah Trust v. Eisenberg*, No. 24-cv-23586-BLOOM, 2025 WL 1311127, *5 (S.D. Fla. May 6, 2025) (quashing a subpoena to the extent it sought information about financial transactions between a non-party and other non-parties not connected to the underlying lawsuit); *Miller v. Secura Supreme Ins. Co.*, No. 22-cv-00037-KLM, 2022 WL 22354500, *5 (D. Colo. Dec. 29, 2022) (quashing a

subpoena that sought tax record information from a non-party on grounds that the non-party has a privacy interest in such documents).

Simply put, the Citations, if permitted in their entirety, run far afoul of Rule 45(d)(3)(B)(i). This alone is grounds to quash the vastly overbroad and unduly burdensome Citations, as written.

### III.    The Citations are Overbroad, Unduly Burdensome, and Not Proportional to the Needs of Plaintiff's Collection Efforts.

Both the "Definitions and Instructions" and the individual Document Requests are overbroad, unduly burdensome, and not proportional to the needs of the Underlying Lawsuit.

### A.    General Objections

Rule 45(c) specifies that a subpoena cannot require a party to produce documents outside of certain geographical limits. By requesting that the documents be produced within Illinois, the Citations violate this rule. In its objections to the Citations, the M Entities reserved, and did not waive, their right to contest the Citations with the court for the district where compliance is properly required, which is the U.S. District Court for the District of Colorado. *See* Exhibit 10.

Additionally, the Citations seek certain documents that Plaintiff has, or could, obtain from the Judgment Debtors. This includes any responsive communications which included the Judgment Debtors, including text messages. To the extent Plaintiff already have the documents sought or may obtain the same directly from the Judgment Debtors without the need to burden the M Entities, as non-parties to the proceedings, reproduction of the same is improper. *See* Rule 26(b)(2)(C) (mandating that courts limit discovery that is unreasonably cumulative, duplicative, or can be obtained from some other source that is more convenient or less burdensome).

Further, the Document Requests each seek production of "All Documents" and "All Communications" in the M Entities' possession, going back more than five years. As a matter of law, such requests are inherently overly broad. *See GSL Group, Inc.*, 2020 WL 12813087, *3.

B.      **Specific Objections**

In addition to these generally applicable defects in the Citations, which the M Entities incorporate into the below stated responses, certain Requests are further objectionable as follows:

1.   **Requests 7-9, 36, 39**

*Request #7: All Documents and Communications Evidencing and/or Relating to amounts paid by You to Triton Marine Holdings, LLC for "Construction Services' during the Relevant Period as reflected in the invoices attached as Exhibit 3, as well as all work performed by Triton in consideration for these amounts.*

*Request #8: All Documents and Communications Evidencing and/or Relating To any work performed by You, whether for financial consideration or otherwise, by any of the Judgment Debtors.*

*Request #9: All Communications (that pertain to the payment of any money, and/or any contract and/or services) between You and any of the Judgment Debtors during the Relevant period.*

*Request # 36: All Documents and Communications Evidencing and/or Relating to any and all employees that were once employed or continue to be employed by You who once were or currently are employed by any of the Judgment Debtors, or any employees shared in any way between You and the Judgment Debtors.*

*Request #39: All Documents and Communications Evidencing and/or Relating to the relationship between You and any of the Judgment Debtors.*

Requests 7, 8, 9, 36, and 39 are not proportional to the needs of the case, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of evidence related to Plaintiff's collection efforts. The M Entities produced all documents and communications related to the payments to Triton Marine Holdings, LLC and the Judgment Debtors. The M Entities have also produced all communications related to its contracts/agreements with the Judgment Debtors. However, Triton Marine Holdings, LLC and the Judgment Debtors worked on numerous projects with the M Entities, and as a result Request Nos. 7-9, 36, and 39 essentially seeks all documents relating to any of those projects – including vast documents that have no bearing on any assets or

property of the Judgment Debtors. After informing Plaintiff of this overreach, the M Entities and Plaintiff agreed that the M Entities would provide Plaintiff with a list of all of the projects that Mr. Tsaparas and former employees of Centaur Construction Company Inc. worked on during the time period provided. And the M Entities did just as agreed, providing Plaintiff with the aforementioned list. Plaintiff cannot turn around and say we want it all, whether relevant or not. Any additional documents responsive to this request would be unduly burdensome on the M Entities as non-parties and Plaintiff has failed to explain why such documents would be relevant to their efforts to collect from the Judgment Debtors.

### 2. Requests 20-23, 28-29

*Request #20*: *A copy of Your Articles of Incorporation and/or Articles of Organization and any amendments thereto.*

*Request #21*: *A copy of Your By-Laws and any amendments thereto.*

*Request #22*: *A copy of the Certificate of Incorporation (and/or Organization) from a Secretary of State evidencing Your existence as a formal business entity.*

*Request #23*: *A copy of Your Notice of Incorporation (and/or Organization) as it appeared when first published.*

*Request #28*: *Copies of corporate/business records or ledgers Evidencing the identity and address of each person or entity who has Owned stock and has/had Ownership Interest in You during the past five (5) years, the consideration paid or promised for the stock and/or Ownership Interest, and the date(s) on which the consideration was paid or promised.*

*Request #29*: *Copies of corporate/business records or ledgers Evidencing the payment of dividends and/or draws to any shareholder and/or Owner since Your incorporation and/or organization, to whom the dividends/draws were paid, the amounts paid, and the date(s) of such payments.*

Requests 20-23 and 28-29 are not proportional to the needs of the case, are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of evidence related to Plaintiff's collection efforts. During conferral, Plaintiff indicated that its purpose for including

these requests is because it believed Mr. Tsaparas may have an ownership interest in the M Entities. As stated above, none of the Judgment Debtors have any ownership interest in the M Entities, which are wholly and solely owned, directly and indirectly, by Mark Hunt. *See* Hunt Dec., ¶ 5. Consequently, information about the formation of the M Entities, the ownership of the M Entities, and payments to the owner(s) of the M Entities has no bearing on any asset or property of the Judgment Debtors. Counsel for the M Entities conveyed this precise fact to counsel for Plaintiff, and Plaintiff agreed to accept the sworn affidavit in lieu of documents responsive to the requests. Plaintiff is now attempting to revert back to its burdensome and harassing requests.

Given the lack of relevance of the documents requested through these requests, as well as the confidential nature of the information being requested, mandating production of such irrelevant documents would be unduly burdensome to the M Entities as non-parties. Moreover, some of the documents requested are publicly available on the Colorado Secretary of State's website, and therefore production of those documents by the M Entities is unnecessarily superfluous.

### 3. Request 30

*Request #30: For each bank account maintained in your name, a copy of the monthly statement(s) for the Relevant Period, ending with the date of Your response to these requests.*

Request 30 is not proportional to the needs of the case, is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of documents relevant to Plaintiff's collection efforts. The M Entities have already produced all information, including the wire transfer receipts, for all payments to or on behalf of the Judgment Debtors. As a result, Plaintiff will not receive any additional relevant information from the M Entities' bank statements, which contain confidential commercial information (including the M Entities' vendor network), as well as information about the M Entities' commercial relationships with third-party partners. Under

these circumstances, courts have concluded that requests for bank statements should be limited to transactions between the relevant parties, which is what the M. Entities have provided. *See Palm Ave. Hialeah Trust*, 2025 WL 1311127, *4 (quashing a subpoena for bank records as overbroad where the subpoena requests all bank statements, rather than those showing transactions between the relevant parties). Therefore, requiring the M Entities to produce additional records about unrelated transactions would be superfluous, unnecessary, and unduly burdensome.

Notably, during conferral discussions, Plaintiff agreed to withdraw this request. Plaintiff now appears to be reneging on their agreement and, again, seeking documents under this request.

### 4. Request 38

*Request #38: All Documents and Communications Relating to Judgment Debtors and/or their partners, members, directors, managers, officers, agents, employees, accountants, counsel, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the foregoing or purporting to act on behalf of any of them.*

Request 38 is not proportional to the needs of the case, is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of evidence related to Plaintiff's collection efforts. As stated above, the M Entities have already produced all documents and communications related to payments to the Judgment Debtors, agreements with the Judgment Debtors, and the Judgment Debtors' income and assets. To provide all additional documents responsive to this request would require the Judgment Debtors to provide every document and communication that includes the Judgment Debtors and any employee of the M Entities who was ever associated with or "Related to" the Judgment Debtors. Because Mr. Tsaparas and former Centaur employees worked on (and continue to work on) many of M Entities' projects, fully responding to this request would require that the M Entities produce potentially thousands of documents and communications about those projects, all of which are entirely irrelevant to the discovery of

16

information about the Judgment Debtors' assets and income. For this reason, Plaintiff agreed to withdraw this request as part of the conferral process. Once again, Plaintiff now appears to have reneged that agreement and is seeking documents under this request, without limitation, absent any change of circumstance or explanation for its position reversal.

### 5. Request 40

*Request #40: All Documents and Communications Evidencing and/or Relating to the relationship between [M Development LLC and M Sourcing LLC].*

Request 40 is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of evidence relevant to Plaintiff's collection efforts. The M Entities are not parties to the Underlying Lawsuit and, as previously stated, the Judgment Debtors own no ownership interest in either of the M Entities. Simply put, there is no justification for seeking all documents, communications and business records evidencing or related to the relationship between the two non-party entities. Nevertheless, for avoidance of all doubt, the M Entities have produced both the articles of organization and the LLC agreement for M Sourcing (the entity in which the Judgment Debtors believe Mr. Tsaparas has an interest), which demonstrates that its sole member is Mark Hunt and that there is no direct legal relationship between M Sourcing and M Development. The M Entities have also produced a letter from their accountant confirming this fact.

### 6. Request 43

*Request #43: All Documents and Communications Evidencing and/or Relating to any K-1, W-2, 1099, tax return, or extension for tax returns not yet filed, including, without limitation, any income, intangible, property or gift tax return, filed by You with any local, state, federal, or foreign government during the Relevant Period, including all exhibits, forms, and schedules attached to the tax returns.*

Request 43 is extraordinarily overbroad and unduly burdensome, as it seeks all of the tax records of the M Entities, a non-party to the Underlying Dispute in which none of the Judgment Debtors hold any interest. Courts are loathe to mandate the production of tax returns ***even of parties***

*to litigation* without substantial justification, and are significantly more reluctant to order the production of tax returns of non-parties. *See, e.g., Miller v. Secura Supreme Ins. Co.*, o. 22-cv-00031-KLM, 2022 WL 2234500, *5 (D. Colo. Dec. 29, 2022) (quashing a subpoena for a non-party's 1099, after finding that non-parties have a privacy interest in tax related financial information and the information sought could be obtained through less obtrusive means).

In this case, during the conferral process, Plaintiff agreed to limit the request to tax records related to the Judgment Debtors, and the M Entities have already provided Plaintiff with those documents, including Mr. Tsaparas' W-2s and W-4s. Plaintiff now wants more under the mistaken belief that, despite the M Entities' representations to the contrary (and offer to make those representations in a sworn declaration), Mr. Tsaparas has some ownership interest in the M Entities and that there are tax records demonstrating this fact. There are not, and the M Entities cannot produce documents to the Judgment Debtors which do not exist. *See Jones*, 2024 WL 3568678 at *3 ("The Court cannot compel Defendant to produce a document that does not exist."). The M Entities have already produced all documents responsive to this request that could possibly be relevant to the Underlying Dispute and have offered up sworn affidavits to assuage Plaintiff's additional concerns. To mandate further production of completely unrelated, superfluous, and confidential tax records of non-parties would violate the M Entities' interest in keeping such sensitive information confidential and impose a grossly undue and prejudicial burden.

### 7. Request 45

*Request #45: All Documents and Communications Evidencing and/or Relating to all donations, charitable gifts, or endowments by You or Judgment Debtors to any Persons or entities, including, without limitation, charitable funds, religious organizations, educational institutions, municipalities, non-profit organizations, hospitals, business leagues, recreation clubs, lodges, fraternities, societies, labor organizations, cooperatives, social welfare organizations, veterans organizations, medical charities, charitable risk pools, and child care organizations.*

Request 45 is overly broad, unduly burdensome, and not likely to lead to the discovery of evidence relevant to Plaintiff's collection efforts. It is unclear how the M Entities' charitable giving history can possibly be relevant to efforts to collect on the Judgment Debtors' assets. And Plaintiff has failed to provide any explanation. During the conferral process, Plaintiff agreed to limit this request to documents related to the charitable giving by the Judgment Debtors, and the M Entities indicated that they do not have any documents responsive to that request, as narrowed. To the extent Plaintiff is now seeking additional responsive documents to the original, overly broad request, Plaintiff has offered no explanation why such documents would be relevant. Mandating such additional production would be unduly burdensome to the M Entities.

IV.    **Illinois Rule 277 Does Not Permit Discovery on Topics Not Related to the Location of the Judgment Debtors' Assets.**

Illinois Rule 277(c)(4) limits the scope of a Citation to "upon reasonable specification thereof, the production at the examination of any books, documents, or records in his or its possession or control which have or may contain information concerning the property or income of the debtor." In this case, as described above, the Citations request documents which are grossly outside of these bounds. The M Entities have already produced all documents concerning the property or income of the Judgment Debtors, and the Court should quash all aspects of the Citations that exceed the documents already produced and issue a protective order against further requests by Plaintiff or productions by the M Entities.

V.    **Request for Award of Attorneys' Fees**

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). This Court is required to "enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party

or attorney who fails to comply." *Id*. Here, the M Entities have been forced to expend significant attorneys' fees – first to negotiate a reasonable resolution of the M Entities' objections and then to file this motion when Plaintiff indicated that the prior agreements between the parties was not acceptable, refused to confer further, and then filed a premature motion to compel outside of the jurisdictional boundaries of Rule 45. Plaintiff has violated every procedural hurdle related to its Citation and related motion to compel. Accordingly, the non-party M Entities request their reasonable attorneys' fees expended to defend this matter.

Likewise, in the event that the M Entities are required to produce additional documents in response to the Citations, Plaintiff must be required to pay the M Entities for the expenses of the employees who must be removed from their daily work obligations to look for information, as well as the technology cost for locating and reviewing the vast amount of documents requested by the Citations. Fed. R. Civ. P. 45(d)(2)(B)(ii) (requiring the protection of a person who is neither a party nor a party's officer from significant expense resulting from compliance). Accordingly, an award to M Entities of their incurred attorneys' fees and costs is appropriate.

**VI.    Conclusion.**

For the reasons stated hereinabove, this Court should quash the Citations and issue a protective order.

WHEREFORE, the M Entities respectfully requests this Court enter an order (i) quashing the Citations, and/or, in the alternative, issuing a protective order protecting the M Entities from further production in response to the Citations and (ii) awarding the M Entities their attorneys' fees and costs, (iii) together with such other and further relief this Court deems just and proper.

Respectfully submitted this 13th day of August, 2025.

VENABLE LLP

*/s/ Jessica J. Arett*
Emily F. Keimig
Jessica J. Arett
1144 Fifteenth Street, Suite 3600
Denver, CO 80202
Telephone: (303) 301-1490
Fax:        (303) 301-1491
Email:      EFKeimig@Venable.com
Email:      JARETT@Venable.com
*Attorneys for M Sourcing, LLC and*
*M Development, LLC*

## CERTIFICATE OF SERVICE

I hereby certify on the 13th day of August, 2025, that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that a copy will be served via U.S. Postal Service and/or via email upon the following:

Zachary J. Watters
VEDDER PRICE P.C.
222 North LaSalle Street, Suite 2400
Chicago, IL 60601
Email:      ZWatters@VedderPrice.com
*Attorneys for Plaintiff NHC LLC*

*/s/ Theresa M. Bohrer*
Theresa M. Bohrer